IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | |
| JAMES DINKINS, | * | Criminal No.: JFM-06-0309 |
| | | Civil No.:    JFM-13-2474 |
| Petitioner. | * | |

...oOo...

## GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S PETITION FOR RELIEF PURSUANT TO 28 U.S.C. SECTION 2255

The United States of America, by its undersigned counsel, hereby responds to the petition for relief pursuant to 28 U.S.C. § 2255 filed by the Petitioner, James Dinkins. For the reasons stated below, the Court should deny the Petition.

### INTRODUCTION

Petitioner purports to a claim for relief pursuant to 28 U.S.C. § 2255, which should be rejected by the Court. Petitioner is precluded from claims that he received ineffective assistance of counsel because the issues he raises present no basis for relief.

### STATEMENT OF FACTS

During the period between October 2004 and November 2006, the defendants were members of the gang sometimes known as "Special," which responsible for which was a lucrative and violent drug-distribution organization in the Bartlett and Cokesbury Avenue neighborhood of Baltimore, Maryland. The organization distributed multiple kilogram quantities of heroin and crack per week and was responsible for numerous homicides, shootings, and armed robberies.

This investigation focused on the organization's heroin-trafficking operation and on a

1

series of violent acts committed in furtherance of that operation between October 2004 and November 2006, including shootings and murders committed to silence witnesses.

The evidence produced at trial of the organization's drug-trafficking operations principally consisted of: (1) statements by cooperating witnesses; (2) drugs and drug proceeds seized during the course of the investigation; and (3) physical surveillance.

That evidence established that Melvin Gilbert was the leader of the organization and that the organization was responsible for the distribution of substantial amounts of heroin, cocaine, crack cocaine, and marijuana on street corners, vacant lots, and other locations in the East Baltimore neighborhoods surrounding Loch Raven Road, Bartlett Avenue, and Cokesbury Avenue. Moreover, the evidence established that Dinkins and Goods were active members of the organization and conspired with Gilbert to distribute narcotics and commit violence in order to protect the organization from competitors and detection.

The investigation of this organization focused on a series of violent acts committed by members of the conspiracy, including the defendants. The violence included disputes between members of the Special organization, at which time members accused one another of robbing the organization of drugs and proceeds. As the violence escalated, "Special" members Tamall Parker and Tracy Love killed victim James Wise as he was walking down the street with another individual. John Dowery, a resident of the neighborhood, witnessed the Wise murder and agreed to cooperate with authorities.

On October 19, 2005, as the state trial of Love and Parker approached, "Special" members James Dinkins (defendant in this case) and Damien West shot and wounded witness Dowery in an attempt to prevent him from testifying against Love and Parker. Dowery survived that attempt

2

on his life.

Following the shooting of Dowery, Dinkins told "Special" member Michael Bryant to dispose of the two guns used in the Dowery shooting and to provide him with two replacement guns. Bryant was unable or unwilling to do so, resulting in a dispute between Bryant and Dinkins. On November 10, 2005, Bryant was shot and killed with one of the guns that had been used to shoot Dowery three weeks earlier. Damien West, an admitted participant in both the Dowery shooting and Bryant's murder, testified that Dinkins was the shooter.

Meanwhile, the attempts to eliminate Dowery as a witness continued. On Thanksgiving Day, November 23, 2006, Dowery was shot and killed in the Kozy Korner, a bar on Bartlett Avenue by Melvin Gilbert and Darron Goods (a/k/a "Moo Man"), who both suspected Dowery of cooperation.

In addition to this series of related shootings, members of the "Special" organization also committed other violent crimes in furtherance of their drug business, to aid "Special," and to aid fellow drug organizations. Shannon Jemmison, a/k/a "Shamrock," was suspected to be a cooperating witness in the investigation of one such fellow drug organization. As a "favor" to the other organization, Gilbert paid Dinkins to kill Jemmison. On September 10, 2005, Dinkins shot Jemmison at point-blank range as Jemmison was playing cards with four other people inside a trailer on a car wash parking lot.

A similar act of violence pre-dated the series of incidents described above. On September 14, 2003, "Special" member Tamall Parker and another member of the "Special" organization attempted to kill a third "Special" member, Kim Crosby, a/k/a "Stink," because they believed Crosby to be responsible for the organization being robbed. Kim Crosby's stepfather,

Kevin Harper, who was with Crosby at the time of the shooting, was killed.

A federal grand jury indicted the appellants via a fourth superseding indictment for various crimes including, Count One: conspiracy to distribute and possess with intent to distribute controlled substances, in violation of 21 U.S.C. § 846, (Dinkins, Gilbert and Goods); Count Two: possession with intent to distribute heroin and cocaine, in violation of 21 U.S.C. § 841, (Gilbert); Count Three:  possession of a firearm and conspiracy to possess a firearm, in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c) and 18 U.S.C. § 2, (Gilbert); Count Four:  witness tampering and aiding and abetting, in violation of 18 U.S.C. § 1512 and 18 U.S.C. § 2, (Dinkins and Gilbert); Count Five:  possession and discharging of a firearm in furtherance of a drug trafficking crime and aiding and abetting, in violation of 18 U.S.C. § 924(c) and 18 U.S.C. § 2, (Dinkins and Gilbert); Count Six:  knowingly causing the death of a person through the use of a firearm, in violation of 18 U.S.C. § 924(j) and 18 U.S.C. § 2, (Dinkins and Gilbert); Counts Seven and Eight:  possess and discharge a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c) and 18 U.S.C. § 2, (Dinkins); Count Nine:  knowingly causing the death of a person through the use of a firearm, in violation of 18 U.S.C. § 924(j) and 18 U.S.C. § 2, (Dinkins);  Count Ten:  witness tampering and aiding and abetting, in violation of 18 U.S.C. § 1512  and 18 U.S.C. § 2, (Gilbert and Goods); Count Eleven:  possession and discharging of a firearm in furtherance of a drug trafficking crime and aiding and abetting, in violation of 18 U.S.C. § 924(c) and 18 U.S.C. § 2, (Gilbert and Goods); Count Twelve:  knowingly causing the death of a person through the use of a firearm, in violation of 18 U.S.C. § 924(j) and 18 U.S.C. § 2, (Gilbert and Goods).

Following a 27-day trial, a jury convicted the appellants of all counts.  On , July 8, 2009,

the defendant appeared for sentencing. After hearing from the parties, the district court imposed the following sentences:

Dinkins received a sentence of: Imprisonment 480 months as to Count One; Life as to Count Four; Life as to Count Five, to run consecutive to Count Four; Life as to Count Six to run concurrent with Count Five; Life as to Count Seven to run consecutive to Counts Five and Six; Life as to Count Eight to run consecutive to Count Seven; Life as to Count Nine to run concurrent with Count Eight, for a total term of Life plus 40 years; Supervised Release five years; and a $700.00 special assessment.

Gilbert received a sentence of: Imprisonment 480 months as to Count One; Imprisonment 240 months as to Count Two to run concurrent to Count One; Life as to Count Three, to run consecutive to Counts One and Two; Life as to Count Four; Life as to Count Five to run consecutive to Count Four; Life as to Count Ten; Life as to Count Eleven to run consecutive to Count Ten; Life as to Count Twelve to run concurrent to Count Eleven, for a total term of Life plus 60 years; Supervised Release five years; and an $800.00 special assessment.

Goods received a sentence of: Count One 40 years; Life as to Count Ten to run concurrent with Count One; Life as to Counts Eleven and Twelve to run consecutive to Counts One and Ten; Supervised Release five years; and a $400.00 special assessment.

The appellants filed a timely notice of appeal.

**ARGUMENT**

**I.     DEFENDANT IS PRECLUDED FROM RELIEF SINCE COUNSEL'S PERFORMANCE WAS NOT INEFFECTIVE AND THE ISSUES HE RAISES FAIL TO STATE A CLAIM FOR RELIEF.**

5

  **A.**  **Summary of Argument**

The government responds to the document filed August 23, 2013 (Document 437).  In summary, the defendant makes the following claims:

(1)[1] Ineffective Assistance of Counsel:

  a. Counsel Failed To Communicate A 40-year Plea Offer To Petitioner. Def's Pet. at 2.

  b. Counsel Failed To Request A Competency Hearing.  Def's Pet. at 3.

  c. Counsel Failed To File A Motion Pursuant To 28 U.S.C. § 455(a)[2]. Def's Pet. at 6.

  d. Counsel Failed To File A Motion Pursuant to 10 U.S.C. § 333(1)(2)[3]. Def's Pet. at 10.

  e. Counsel Did Not Object To The Jury Instructions At Trial Or Challenge Them On Appeal.  Def's Pet. at 13 and 20.

  f. Counsel Failed To File A Motion Pursuant To Rule 6(f) and (d)[4].  Def's

---

[1] The Petitioner's pleading (Document 437), contains no numbering of claims and no outline or structure of these claims.  As such, the Government will number the claims in an attempt to address them in some order.

[2] 28 U.S.C. § 455 (a) provides:  Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

[3] 10 U.S.C. § 333(1)(2) provides:  The President, by using the militia or the armed forces, or both, or by any other means, shall take such measures as he considers necessary to suppress, in a State, any insurrection, domestic violence, unlawful combination, or conspiracy, if it—
**(1)**so hinders the execution of the laws of that State, and of the United States within the State, that any part or class of its people is deprived of a right, privilege, immunity, or protection named in the Constitution and secured by law, and the constituted authorities of that State are unable, fail, or refuse to protect that right, privilege, or immunity, or to give that protection; or
**(2)**opposes or obstructs the execution of the laws of the United States or impedes the course of justice under those laws.

[4] Fed. R. Civ. P. 6 concerns computing and extending time requirements for civil

        Pet. at 17.

    g. Counsel Failed To Object To Evidence Of The Conspiracy. Def's Pet. at 19.

    h. Counsel Failed To Object To The 924(c) Charges. Def's Pet. at 22.

    i. Defendant Was Denied Effective Assistance When District Court Failed To Determine Where Petitioner's Crime Was Committed For Purposes of Venue. Def's Pet. at 31.

(2). The Sentencing Process Was So Distorted As To Render The Sentencing Inherently Suspect. Def's Pet. at 12.

(3). Convictions Should Be Reversed as Government Counsel Was Not Authorized to Appear Before The Grand Jury. Def's Pet. at 17.

### B. Counsel's Performance Was Not Ineffective

The defendant bases his claims of ineffective assistance of trial counsel on a variety of meritless accusations and a wholly false set of facts. The test for ineffective assistance of counsel is governed by *Strickland v. Washington*, 466 U.S. 668. In *Strickland*, the Supreme Court set out a two prong test to determine if counsel's assistance to the defendant was effective. For the first prong, the "performance prong," the defendant must show that counsel's performance was deficient; that the errors made by counsel were so serious that counsel was not functioning as the "counsel" guaranteed to the defendant by the 6th Amendment. *Id*. at 690. Such a test is highly deferential to the attorney; there is a strong presumption that the attorney's conduct falls within a range of reasonable professional assistance. *Id*. at 689.

To satisfy the second prong of the *Strickland* test, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

---

motions. It is unclear how this rule is applicable to the defendant's current petition.

proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

As noted above, the defendant asserts the following grounds for ineffective assistance of counsel:

(1).     Counsel Failed To Communicate A 40-year Plea Offer To Petitioner:   No such plea offer was ever envisioned or even solicited by the defendant, and as such, was never presented to counsel for the defendant's consideration.   Moreover, the defendant presents no proof to support this allegation.

(2).     Counsel Failed To Request A Competency Hearing:   Counsel appropriately determined such a request would be fruitless as the evidence did not support such a request. Moreover, during the sentencing phase of this matter numerous psychiatrists, psychologists, social workers and therapists presented a complete social and psychiatric profile of the defendant to the jury for consideration.   No issues related to the defendant's competency were discovered at that time.

(3).     Counsel Failed To File A Motion Pursuant To 28 U.S.C. § 455(a):   Counsel appropriately determined such a request would be fruitless as the evidence did not support such a request.

(4).     Counsel Failed To File A Motion Pursuant to 10 U.S.C. § 333(1)(2):   Counsel appropriately determined such a request would be fruitless as the evidence did not support such a request.

(5).     Counsel Did Not Object To The Jury Instructions At Trial Or Challenge Them On Appeal:   Counsel appropriately determined such an appeal would be

8

frivolous.

  (6). Counsel Failed To File A Motion Pursuant To Fed. R. Civ. P. Rule 6(d) and (f): Counsel appropriately determined such a request would be fruitless as the evidence did not support such a request.

  (7). Counsel Failed To Object To Evidence Of The Conspiracy: Counsel appropriately determined that based on the overwhelming evidence of the defendant's involvement in the conspiracy, such a challenge would be fruitless.

  (8). Counsel Failed To Object To The 924(c) Charges: Counsel appropriately determined that based on the overwhelming evidence of the defendant's use of firearms throughout his membership and involvement in the conspiracy, such a challenge would be fruitless.

  (9). Defendant Was Denied Effective Assistance When The District Court Failed To Determine Where The Defendant's Crime Was Committed For Purposes of Venue: Counsel appropriately determined that based on the overwhelming evidence of the defendant's membership in the Baltimore, Maryland based conspiracy, such a challenge would be fruitless.

  **C.** **Legal Analysis**

The defendant bears the burden of proving *Strickland* prejudice, and unless the defendant meets that burden, "a reviewing court need not consider the performance prong." *Fields v. Attorney Gen. Of Md.* 956 F.2d 1290, 1297 (4th Cir. 1992).

A close reading of the case history indicates that numerous motions were filed on the defendant's behalf and numerous evidentiary hearings were held prior to trial.  In addition, hours of research, argument and discussion preceded the finalization of the jury instructions used at

trial. Throughout this long and exhaustive trial, defense counsel executed a sound trial strategy, using pre-trial and trial motions and argument to effectively implement that strategy in their representation of the defendant. Moreover, on appeal, counsel raised several issues appropriate for appellate consideration, including *Batson* challenges, severance, hearsay evidence and the seating of an anonymous jury. Accordingly, it cannot be said that defense counsel's representation fell below "an objective standard of reasonableness." *Strickland,* at 687-91. In fact, some could say, and it is difficult to deny, that defense counsel's zealous and aggressive and intelligent representation resulted in the jury's rejection of the death sentence, thereby effectively saving the defendant's life.

Even if this court finds that the first prong of the *Strickland* test is satisfied, the court must still deny relief to the defendant because the second prong is not met. To satisfy the second prong of the *Strickland* test, the "prejudice prong," the defendant must show that the deficient performance prejudiced the defense. In other words, the defendant must prove that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. The Court defined a reasonable probability as sufficient to undermine confidence in the outcome. *Strickland* at 694. The defendant must make both showings; otherwise the court is unlikely to hold that the sentence resulted from a breakdown in the adversary process that makes the result unreliable. However, the defendant must prove that the error had an effect on the judgment; an error by counsel does not warrant setting aside the judgment if the error had no effect on the judgment. *Id*. at 691.

Here, the defendant has not presented a shred of evidence to even remotely suggest that but for the alleged ineffective conduct of his trial counsel, the outcome of this case would have

10

been different; any mistakes made by counsel in this case cannot be said to have affected the outcome.

As set forth in the facts above and clearly in the trial transcripts, which the government would incorporate into this response, evidence of the defendant's willful participation in the Special Heroin drug conspiracy, his willful participation in the Dowery non-fatal shooting and later, his willful participation in two additional murders, including the murder of a co-conspirator (Bryant) and of an individual he merely believed was a federal witness (Jemmison), was overwhelming. From his extended participation in the overarching drug conspiracy from which these murders were born, to the planning and brazen execution of the murders for which he stands convicted, it suspends belief that any of the defendant's claims of ineffectiveness would have prejudiced his defense and resulted in a different verdict.

Accordingly, the defendant's allegations of ineffective assistance of counsel must be denied.

### D.  Defendant's Remaining Claims

The defendant claims, but provides no supporting proof, that (1) the sentencing process was "so distorted as to render the sentencing inherently suspect," and (2) that his convictions should be reversed because government counsel was not authorized to appear before the Grand Jury.  Def's Pet. at 12 and 17.  These claims, like those above, are wholly without merit. First, the defendant presents no evidence to which the government can respond to support his argument regarding the "inherently unfair" sentencing process.  Moreover, the defendant's allegations regarding the sentencing process are claims that should have been raised on appeal. Instead, the defendant now attempts to present those claims for the first time here, in a 2255

petition, where this court is without authority to review.

Finally, the defendant alleges the indictment under which he was charged was deficient because counsel for the government was unauthorized to appear before the grand jury because of their "personal participation in and knowledge of certain events of the investigation which led to the indictment." Def's Pet. at 17. The defendant cites, albeit incorrectly, the "code of responsibility" of the American Bar Association DR5-191(B) in support of this argument. However, the defendant's allegation is wholly without merit. Counsel for the government had no personal participation in the events of the investigation and no personal knowledge of the charges in the indictment other than those gleaned from the investigation. Once again, the defendant fails to provide even a shred of evidence for his bald allegations. As such, the defendant's allegations are without merit and his request for relief must be denied.

## CONCLUSION

For the reasons stated here, the United States respectfully requests that this Honorable Court deny the defendant's Petition for Relief Pursuant to 28 U.S.C. § 2255.

Respectfully submitted,

Rod J. Rosenstein
United States Attorney

By:_____/s/_____
Debra L. Dwyer
Assistant United States Attorney
36 South Charles Street
Baltimore, Maryland 21201
(410) 209-4813

**CERTIFICATE OF SERVICE**

This is to certify that on this 5th day of November, 2013, a copy of the foregoing Government's Response to Motion under 28 U.S.C. § 2255 was sent by first-class mail, postage prepaid, to:

James Dinkins
Reg. #05235-748
USP BEAUMONT
U.S. PENITENTIARY
P. O. BOX 26030
BEAUMONT, TX 77720

                                           __/s/_____
                                           Debra L. Dwyer
                                           Assistant United States Attorney